1998-NMCA-151

967 P.2d 836

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Marvin VALLEJOS, Defendant–
Appellant.**

**No. 19164.**

Court of Appeals of New Mexico.

Sept. 8, 1998.

Certiorari Denied, No. 25,379, Oct. 15, 1998.

Tom Udall, Attorney General, Bill Primm, Ass't Attorney General, Santa Fe, for Appellee.

Liane E. Kerr, Albuquerque, for Appellant.

## OPINION

### PICKARD, J.

{1} Defendant was convicted of two counts of distribution of marijuana. On appeal, Defendant argues that (1) the State deprived him of his right to testify before the grand jury by failing to provide him with notice that he was a target witness; (2) the undercover officer who purchased marijuana from Defendant had not complied with law enforcement certification requirements; and (3) the trial court improperly admitted evidence that (a) the undercover officer had purchased drugs from Defendant's girlfriend and (b) "c-scales," which could be used to weigh specific weights, were found at Defendant's residence during a search warrant executed six weeks after the undercover officer purchased marijuana from Defendant. We disagree with each of Defendant's arguments. Accordingly, we affirm.

### BACKGROUND

{2} On two dates in August 1996, Defendant, while at his residence, sold a "quarter baggie" of marijuana to an Otero County undercover officer. Approximately six weeks after the marijuana was purchased, a search warrant was executed at Defendant's residence. C-scales, used to weigh up to four ounces, were discovered in Defendant's bedroom. On October 4, 1996, Defendant was arrested and charged with two counts of distributing marijuana contrary to NMSA 1978, § 30–31–22(A) (1990).

{3} Defendant filed several pretrial motions. Defendant challenged the State's failure to inform him of his target status, thus depriving him of the opportunity to testify before the grand jury. The trial court denied the motion as untimely.

{4} Defendant also moved to dismiss the charges, claiming that the undercover officer did not comply with mandatory state requirements concerning certification and the filing of an oath and appointment to serve as a law enforcement officer. The State responded that the officer was sworn in and signed a commission card, although that card was not filed until September 1996, after Defendant was arrested. The State also argued that the Otero County sheriff believed that the undercover officer was a law enforcement officer and did not file the commission or appointment earlier because he feared jeopardizing the undercover investigation. Additionally, the State contended that dismissal of the case was not an appropriate remedy for failure to comply with the statutory requirements of certification for law enforcement officers. The court found that Defendant had not shown any prejudice and that dismissal was not an appropriate remedy.

{5} Defendant also alleges error during his trial. In the opening statement, the prosecutor stated that c-scales had been discovered during a search of Defendant's residence. Defendant objected claiming that he had no prior knowledge of the search warrant. The prosecutor responded that the agent who executed the warrant was on the State's witness list and Defendant had interviewed all of the State's witnesses. Also, the prosecutor claimed that a copy of the warrant had been delivered to defense counsel just four days prior to trial. The trial court noted that the evidence of c-scales was prejudicial, but instead of declaring a mistrial, the judge issued a cautionary instruction to the jury to disregard any reference to the c-scales and the warrant.

{6} The judge, however, also cautioned defense counsel that if he opened the door to the issue, the evidence about the c-scales would be admitted. The judge indicated that if the defense sought to prove that the officer was lying, then the evidence could properly

be introduced under Rule 11–404(B) NMRA 1998 to show Defendant's preparation, plan, opportunity, and intent and also to corroborate the officer's testimony.

{7} During trial, defense counsel questioned witnesses about the undercover officer's bias, whether the undercover officer made accurate reports, whether the drug purchases were recorded, and whether all evidence against Defendant was based solely on the undercover officer's recollection. The State then sought to introduce evidence of the c-scales found at Defendant's residence. The trial court ruled that defense counsel had opened the door by attacking the undercover officer's credibility and that evidence of the c-scales could be introduced to corroborate the officer's testimony.

{8} Additionally, Defendant claims that error occurred during the direct examination of the undercover officer. During his direct examination, the officer testified that after he purchased marijuana from Defendant, the two of them were drinking beer and Defendant stated that his girlfriend told him that the officer was an undercover agent. The officer denied that he was and advised Defendant to tell his girlfriend to stop spreading that rumor. The officer then stated that he was familiar with Defendant's girlfriend because he had made several drug purchases from her in the past while undercover. Defense counsel did not object. Defendant claims that the court erred in allowing this unfairly prejudicial testimony to be introduced.

## DISCUSSION

### A. Grand Jury

{9} Defendant alleges that the State did not inform him about his target status and deprived him of his right to testify before the grand jury. *See* NMSA 1978, § 31–6–11(B) (1981). The trial court rejected Defendant's argument as untimely.

■ {10} Rule 5–601(D) NMRA 1998 requires that a party in a criminal proceeding must make motions at the time of arraignment or twenty days thereafter unless good cause is shown and the court waives the time requirement. Defendant did not file a motion to dismiss for failure to provide target

notice until eight months after he was arraigned, and he did not show any cause below or on appeal for waiving the time limit. Thus, we agree with the trial court that the motion was untimely, and we affirm on this basis.

### B. Law Enforcement Officer Certification Requirements

{11} Law enforcement officers are required to file an oath and appointment with the county and district court clerks. *See* NMSA 1978, § 4–41–10 (1983). Additionally, law enforcement officers must comply with certain qualifications for certification. *See* NMSA 1978, § 29–7–6 (1993). Defendant argues that the undercover officer did not comply with any of these requirements. The State addressed the merits of Defendant's issue and also argued that the statutes in question do not provide a remedy for failure to comply and that dismissal of the charges is unwarranted. We agree with the latter argument.

■ {12} We hold that the remedy Defendant was looking for, dismissal, was not appropriate. There is no authority which, under these circumstances, would prevent an undercover officer from testifying because that person is not certified as a law enforcement officer. Rather, the admission of a witness's testimony is governed by Rule 11–602 NMRA 1998, which allows a witness who has personal knowledge of the matters to testify.

{13} Moreover, as we held in *State v. Martinez*, 104 N.M. 584, 587, 725 P.2d 263, 266 (Ct.App.1986), the decision to allow the witness to testify about his employment is within the trial court's discretion. In *Martinez*, the defendant issued a challenge, much like the challenge in this case, to a special deputy's qualifications under Section 4–41–10. *See Martinez*, 104 N.M. at 586–87, 725 P.2d at 265–66. We agree with the conclusion in *Martinez* that the admission of evidence is within the trial court's discretion and that no error occurred in allowing the officer to testify. *See id.* at 587, 725 P.2d at 266.

{14} In this case, we cannot say that the trial court abused its discretion in allowing the witness to relate his work history and undercover assignments. *See State v. Worley*, 100 N.M. 720, 723, 676 P.2d 247, 250 (1984) ("Admission of evidence is entrusted to the discretion of the trial court, and rulings of the trial judge will not be disturbed absent a clear abuse of discretion."). Additionally, Defendant has not referred our attention to how he was specifically prejudiced by the officer's lack of certification. Contrary to Defendant's assertions, the undercover officer did not arrest or charge him. Thus, we affirm on this issue.

### C. Testimony about Defendant's Girlfriend

{15} Defendant contends that the undercover officer's testimony that he purchased drugs from Defendant's girlfriend was unfairly prejudicial because the jury was more likely to convict Defendant due to his association with drug dealers. Despite Defendant's arguments, we affirm on this issue.

{16} Defendant did not object to the testimony and has not preserved this issue for appellate review. *See State v. Lopez*, 105 N.M. 538, 544, 734 P.2d 778, 784 (Ct.App. 1986) ("To preserve a claim of error for appellate review involving the admissibility of evidence, a party must make a timely objection."). Defense counsel claims that he did not object because he could not anticipate the officer's testimony. Nonetheless, defense counsel heard the testimony in the courtroom and did not object at that time. Nor did defense counsel object when the prosecutor later asked the officer "[a]nd had you made a purchase from [the girlfriend]?" We cannot excuse defense counsel's failure to timely object to either of the two references to Defendant's girlfriend selling drugs to the undercover officer. *See State v. Lucero*, 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App.1986) (stating that an "objection must be sufficiently timely and specific to apprise the trial court of the nature of the claimed error and to invoke an intelligent ruling by the court.").

{17} Nor do we find the presence of fundamental error. *See State v. Osborne*, 111 N.M. 654, 662, 808 P.2d 624, 632 (1991) (fundamental-error doctrine is an exception to the preservation rule and applies when the question of guilt is so doubtful that it would shock the conscience of the court to permit the conviction to stand, or if substantial justice has not been done.). Therefore, we affirm on this issue.

### D. Admission of C–Scales into Evidence

{18} Defendant does not argue that the court erred in denying his motion for a mistrial because of the reference in opening statement by the prosecutor to c-scales and marijuana "roaches" which were discovered in Defendant's home. Roaches are the butts of marijuana cigarettes. Indeed, Defendant concedes that the trial court's curative instruction to the jury eliminated any reversible error at this point in the trial. Instead, the objection is to the later admission into evidence of the c-scales as uncharged conduct which, according to Defendant, was improper and prejudicial. Defense counsel also contends that he was constrained by the trial court's warning during opening statement and counsel believed that if he inquired into anything that he would open the door to the admission of the c-scales. Additionally, Defendant attacks the State's failure to timely disclose the evidence of the c-scales prior to trial. We disagree with each of Defendant's arguments.

{19} With a few exceptions, all relevant evidence is admissible. *See* Rule 11–402 NMRA 1998. The decision to admit relevant evidence is in the trial court's discretion. *See State v. Hernandez*, 115 N.M. 6, 19, 846 P.2d 312, 325 (1993). On appeal, we will not reverse a decision of the trial court unless the court abused its discretion. *See id.*

{20} However, character evidence is not admissible to prove that a defendant acted in conformity with that character trait in a specific instance. *See* Rule 11–404; *see also State v. Reneau*, 111 N.M. 217, 219, 804 P.2d 408, 410 (Ct.App.1990). Nonetheless, despite this prohibition, evidence of uncharged conduct is admissible if the State makes "a sufficient showing that the evidence would serve a legitimate purpose other than to show character" and if the probative value

of the evidence substantially outweighs the danger of unfair prejudice. *State v. Jordan,* 116 N.M. 76, 80, 860 P.2d 206, 210 (Ct.App. 1993).

■ {21}  In this case, Defendant claims that the admission of the c-scales was prejudicial because the State was attempting to introduce evidence of uncharged conduct—possession of drug paraphernalia. The State's explanation, however, is that the evidence was offered to corroborate the undercover officer's testimony, which had been challenged by defense counsel. Defense counsel, during the cross-examination of several of the State's witnesses, questioned why the purchases were not recorded, whether the undercover officer used alcohol, and whether the undercover officer had an interest in falsifying or fabricating information in his reports.

{22}  The c-scales also corroborated the officer's testimony in that the evidence tended to show that Defendant had the means to commit the charged offense in that the c-scales were designed to measure specific quantities of marijuana—the quantities Defendant was accused of selling. Defendant sold the undercover officer a quarter ounce of marijuana on two occasions. Defendant also promised to sell the officer a full ounce in the future. Furthermore, the c-scales were also evidence of Defendant's intent. One state witness testified that the c-scales were inconsistent with personal use. The c-scales, which could measure up to four ounces, were circumstantial evidence which allowed the jury to infer that Defendant used them to weigh specific portions of marijuana so as to distribute.

■ {23}  Additionally, despite Defendant's argument to the contrary, the fact that the c-scales were discovered approximately six weeks after the alleged transactions was not too remote in time to render the evidence irrelevant. We are aware of a Seventh Circuit case, *United States v. Betts,* 16 F.3d 748, 756 (7th Cir.1994), which held that the discovery of marijuana and drug paraphernalia at least eighteen months after an alleged conspiracy occurred was not probative of the defendants' knowledge or intent with respect

to the conspiracy. *Betts,* however, is distinguishable.

{24}  In *Betts,* the conspiracy with which the defendants were charged ended in August 1990. *See id.* at 758. The discovery of marijuana and related paraphernalia pursuant to a search warrant did not occur until February 1992. *See id.* at 752. Because the conspiracy ended years before the discovery of the evidence, the Seventh Circuit was at a loss as to how that evidence revealed the defendants' knowledge or intent at that time.

■ {25}  Here, the period of time between the transactions and the subsequent discovery of the evidence during the search was not so excessive as to render it irrelevant as to Defendant's intent or state of mind six weeks earlier. *See, e.g., United States v. Hadaway,* 681 F.2d 214, 217–18 (4th Cir. 1982) (evidence of defendant's subsequent criminal acts was admissible to show the defendant's knowledge and intent to participate in the charged offense). In fact, the evidence in this case may be likened to the documents and information regarding other conspirators in *Betts. See Betts,* 16 F.3d at 756. Although the defendants in that case lumped that information in with the information about other crimes, the court held that the document information was not evidence of "other acts," but was rather circumstantial proof of the very crime with which the defendants were charged. *See id.* at 757. The same may be said here. The presence of the c-scales in Defendant's residence a few weeks after the sales at issue, under circumstances where Defendant had no reason to know he was under investigation and no reason to get rid of the c-scales, may be viewed as circumstantial proof supporting the sales with which Defendant was charged.

■ {26}  We also conclude that the trial court did not abuse its discretion in admitting the evidence over Defendant's objection that it was more prejudicial than probative. *See State v. Rael,* 117 N.M. 539, 542, 873 P.2d 285, 288 (Ct.App.1994) ("While Rule 403 recognizes the district court's discretion to strike a balance between the probative value and prejudicial effect of evidence, it requires the district court to be sensitive to the potential prejudice inherent in evidence of Defen-

dant's prior uncharged conduct."). Unlike *State v. Aguayo*, 114 N.M. 124, 128, 835 P.2d 840, 844 (Ct.App.1992), where the State failed to offer any rationale for admitting evidence of the defendant's prior bad acts, here the State articulated reasons for admitting the evidence.

{27} As discussed previously, the State explained the need for the evidence to corroborate the officer's testimony by showing that Defendant had the means and intent to commit the charged offense. This rationale supports the trial court's exercise of discretion.

{28} Moreover, in this case, the danger of unfair prejudice from the admission of drug paraphernalia was not so great. The possession of c-scales is not the type of offense for which the jury would feel that Defendant must be punished regardless of whether he committed the charged offense. *See, e.g., United States v. Ridlehuber*, 11 F.3d 516, 521–24 (5th Cir.1993) (in a prosecution for gun possession, evidence that defendant possessed chemicals which could be used for manufacturing illegal drugs was unfairly prejudicial because that is the type of offense for which the jury may feel that the defendant should be punished, regardless of whether he is guilty of the charged offense). We therefore conclude that the trial court did not abuse its discretion in admitting the evidence of the c-scales over Defendant's objection.

{29} We understand the position in which defense counsel claims he was placed when he argues that he felt constrained by the trial court's admonition not to open the door by questioning the State's witnesses about the officer's credibility. Because the evidence of the drug purchases was based on the officer's testimony, it may have appeared to defense counsel that the only viable defense strategy would be to attack the officer's credibility. However, defense attorneys must often make these types of difficult decisions. For example, defense attorneys must choose whether to allow their clients to testify when the client may be impeached by prior inconsistent statements, prior dishonest acts, or prior convictions. *See* Rule 11–613 NMRA 1998; Rule 11–609(A)(1) & (2)

NMRA 1998; *State v. Lindsey*, 81 N.M. 173, 181, 464 P.2d 903, 911 (Ct.App.1969).

{30} In this case, defense counsel chose to attack the officer's credibility even after he was warned by the trial court that if he pursued this theory the evidence of the c-scales would be admitted. Nevertheless, defense counsel made a conscious decision to pursue the theory that the officer's credibility was questionable and that the jury should not believe the officer's version of the events. When defense counsel challenged the officer's credibility, the evidence of the c-scales became admissible to corroborate the officer's testimony.

{31} Defendant's final argument is that the trial court erred in admitting the evidence because the State did not timely disclose the evidence to Defendant. Following the reference to the c-scales in opening statement, defense counsel objected, in part, that the State did not disclose the evidence. The trial court deferred ruling on the matter and admonished the jury not to consider the prosecutor's reference. Later, during the trial, when the State sought to introduce the c-scales to corroborate the agent's testimony, defense counsel did not renew his objection due to the discovery violation. Defense counsel did not seek a ruling, and by failing to do so, this issue has not been preserved for appeal. *See State v. Vargas*, 1996–NMCA–016, ¶ 15, 121 N.M. 316, 910 P.2d 950 (defendants failed to preserve a pretextual stop issue when they did not request that the trial court rule on that issue).

### E. Cumulative Error

{32} The cumulative error doctrine calls for reversal of a conviction where the cumulative impact of errors is so prejudicial that it deprives a defendant of his fundamental right to a fair trial. *State v. Wilson*, 109 N.M. 541, 547, 787 P.2d 821, 827 (1990) (prosecutorial misconduct in eliciting prohibited evidence part of cumulative error). Defendant contends that the cumulative impact of the errors that occurred in this case deprived him of his right to a fair trial. Because we have rejected Defendant's assertions of error, we conclude that the doctrine of cumula-

tive error does not apply here. *See State v. Larson,* 107 N.M. 85, 86, 752 P.2d 1101, 1102 (Ct.App.1988) (where there is no error there can be no cumulative error).

## CONCLUSION

{33}   For the foregoing reasons we affirm Defendant's convictions.

{34}   **IT IS SO ORDERED.**

DONNELLY and APODACA, JJ., concur.