This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                             **NO. 26,525**

**DAVID HASKINS,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Silvia E. Cano-Garcia and Stephen Bridgforth, District Judges**

Gary K. King, Attorney General
Santa Fe, NM
Joel R. Jacobsen, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

Defendant appeals his convictions for three counts of criminal sexual contact of a minor in the third degree and one count of criminal sexual contact in the fourth degree. On appeal, Defendant argues that the evidence was insufficient to support his convictions and that the district court judge erred in denying his request for a change of venue. We affirm.

**I.      Sufficient Evidence Supports Defendant's Convictions**

We review the evidence to determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). Under this standard, we view the evidence in the light most favorable to support the guilty verdict, and indulge all reasonable inferences and resolve all conflicts in the evidence in favor of upholding the verdict. *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We do not re-weigh the evidence, nor substitute our "judgment for that of the fact-finder so long as there is sufficient evidence to support the verdict." *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319.

Defendant's convictions for three counts of criminal sexual contact of a minor (CSCM) in the third degree require substantial evidence that Defendant unlawfully and intentionally touched or applied force to Victim's breasts; that Victim was twelve

years of age or younger; and that the incidents happened in the time frame between October 1 and December 31, 1998; January 1 and March 31, 1999; and April 1 and July 5, 1999. *See* NMSA 1978, § 30-9-13(A), (C) (2003).

Defendant's conviction for one count of CSCM in the fourth degree requires evidence that Defendant unlawfully and intentionally touched or applied force to Victim's breasts; that in doing so, Defendant used physical force or physical violence; that Victim was at least thirteen but less than eighteen years old; and that this happened in the time frame between July 6 and September 30, 1999. *See* § 30-9-13(A), (D).

Victim testified that she knew Defendant from church and, at one point, considered Defendant to be "a good friend." However, Victim testified that her relationship with Defendant changed when Defendant "began to touch me in the wrong areas." Specifically, Victim testified that Defendant would hug her normally but would then turn her body around, cross his arms in the front of her body, put his hands and arms on her breasts, and squeeze her breasts through her clothing. In response to the prosecutor's question of "[d]id you ever have to struggle to get away from him?" Victim responded, "Yeah, I tried to walk off."

Victim further provided that the touching began from the time she was about twelve years old and continued after she turned thirteen. During the applicable time-

3

frame, Victim testified that Defendant touched her more than fifty times, doing so multiple times every Sunday that she and Defendant were both at church. In October 1999, when Victim was thirteen, she reported the crimes to her school counselor. Based on the foregoing testimony by Victim, we hold that sufficient evidence supports Defendant's convictions. *See State v. Sparks*, 102 N.M. 317, 320, 694 P.2d 1382, 1385 (Ct. App. 1985) (defining substantial evidence as that evidence which a reasonable person would consider adequate to support a defendant's conviction).

In an effort to cast doubt on the jury's verdict, Defendant asserts that Victim's testimony was not credible because no witnesses saw the unlawful touching and that, had any such touching occurred, witnesses would have seen it. Any failure to observe the illegal conduct by witnesses, however, does not refute Victim's testimony, but instead is a matter for the jury to consider in assessing the weight of the evidence. *See State v. Gonzales*, 1997-NMSC-050, ¶ 18, 124 N.M. 171, 947 P.2d 128 (holding that it is the fact-finder's prerogative to weigh the evidence and to judge the credibility of the witnesses). In rejecting Defendant's position that the unlawful touching never occurred, for example, the jury may have agreed with Victim that the other parishioners, although nearby, did not see the touching because either they were not watching or were not paying attention. As stated by Victim, although other people were around, they would "not be like staring right at us." *See State v. Huff*, 1998-

4

NMCA-075, ¶ 11, 125 N.M. 254, 960 P.2d 342 (holding that, although the defendant offered conflicting testimony, the jury is entitled to disregard the defendant's version of the facts). Moreover, while Victim delayed in reporting the crimes, the jury reasonably could have relied on Victim's testimony that she initially did not tell anyone because she was scared and afraid that no one would believe her. Victim additionally testified that she did not immediately report the crimes because she at first did not understand that the touching was wrong and because Defendant was her mother's friend.

## II.     The Court did not Abuse its Discretion in Denying a Change of Venue

Defendant argues that the judge erred in denying his request for a change of venue on the basis that publicity prevented him from receiving a fair trial. As the party opposing the judge's venue decision, Defendant must show that the judge abused his discretion, and must do so by showing through clear and convincing evidence that a fair trial by an impartial jury was a practical impossibility. *State v. House*, 1999-NMSC-014, ¶¶ 31, 43, 127 N.M. 151, 978 P.2d 967.

Exposure of potential jurors to pre-trial publicity does not in and of itself require a change of venue. *State v. Chamberlain*, 112 N.M. 723, 726, 819 P.2d 673, 676 (1991). Rather, "[t]he pertinent inquiry is whether the jurors . . . had such fixed opinions that they could not judge impartially the guilt of the defendant." *State v.*

*Hernandez*, 115 N.M. 6, 21, 846 P.2d 312, 327 (1993) (alterations in original) (internal quotation marks and citation omitted). Such lack of partiality results when there has been either actual or presumed prejudice. As provided in *House*, 1999-NMSC-014, ¶ 46,

> Actual prejudice requires a direct investigation into the attitudes of potential jurors. Under this inquiry, the court will conduct a voir dire of prospective jurors to establish whether there is such widespread and fixed prejudice within the jury pool that a fair trial in that venue would be impossible. Presumed prejudice, on the other hand, addresses the effect of publicity about a crime upon the entire community where the trial takes place. Under this inquiry, a change of venue should be granted if evidence shows that the community is so saturated with inflammatory publicity about the crime that it must be presumed that the trial proceedings are tainted. . . . Thus, actual prejudice is based upon direct evidence f bias in the minds of individual prospective jurors, while presumed prejudice makes inferences about the effect of publicity on the community as a whole.

(Citations omitted.)

**A.    Background**

Defendant's venue argument is premised on publicity that took place in April 2005, prior to jury selection and approximately nine months before his January 2006 trial. Specifically, on April 6, 2005, a local television station covered Defendant's convictions for criminal sexual contact of a minor (CSCM) ("*Haskins I*"). The contents of the television broadcast were not disclosed below. The local television station also placed an April 11, 2005, article on its website that referenced

Defendant's conviction in *Haskins I*. The website article relates that a local massage therapist, upon hearing about Defendant's *Haskins I* conviction, created a website informing potential customers about what types of massages are and are not appropriate during a massage session. Lastly, on April 7, 2005, the Sun News published a newspaper article relating Defendant's *Haskins I* conviction for eight counts of criminal sexual contact of a minor and providing that Defendant had an upcoming trial in the present case for twelve counts of molesting a girl at his church.

Based on his position that the above publicity saturated the community, Defendant argued below that the publicity was presumptively prejudicial and for this reason advocated for the judge "to grant a change of venue without conducting any voir dire of the prospective jury panel." Defendant asserted that it would require extensive individual voir dire to uncover bias and that the more effective approach would be to simply change venue rather than undergo potentially expensive and ineffective voir dire. In the event the judge did not agree with a change of venue prior to voir dire, Defendant requested individual voir dire and supplemental jury questionnaires. At the venue hearing, the judge, rather than rely on a presumption of prejudice, elected instead to address the effect of publicity, if any, by voir dire and an examination of actual prejudice. In so doing, the court ruled that at this point, there was no "sufficient reason to require us to either change venue or put the trial off in

order to do individual questionnaires." The judge also denied Defendant's request for individual voir dire but did state that at voir dire "we will ask who has seen or heard anything in the media and talk to those. We don't need to talk to those who haven't." During the subsequent voir dire selection of the jury, the judge did not uncover any actual prejudice as a result of the publicity.

Before turning to the merits, we briefly address the State's argument that it is unnecessary to address Defendant's venue argument because the judge, in asking prospective jurors during the voir dire proceedings whether they had been exposed to any publicity, granted Defendant's requested relief. We disagree. As discussed above, Defendant advocated first for a change of venue. Defendant's request that publicity be addressed by voir dire questioning was contingent upon a denial of his motion for change of venue. And while Defendant did provide input to the judge regarding the voir dire question on publicity he did so only after noting that "[w]e tried to do a venue motion on this[.]" *See State v. Corneau*, 109 N.M. 81, 89, 781 P.2d 1159, 1167 (Ct. App. 1989) (recognizing that a defendant does not need to renew an objection at trial when the issue is fully preserved prior to trial).

**B.      The Court did not Abuse its Discretion in Choosing to Proceed to Voir Dire to Address the Possible Effects of the Publicity**

Defendant argues that the publicity resulted in a presumption of prejudice which merited a change of venue without a showing of actual prejudice. To

successfully change venue prior to voir dire because of presumed prejudice, the movant must establish a "reasonable probability" that he or she cannot receive a fair trial in the venue. *House*, 1999-NMSC-014, ¶ 57. The decision to wait "until voir dire before granting or denying a motion to change venue rests with the sound discretion of the trial court." *State v. Mantelli*, 2002-NMCA-033, ¶ 56, 131 N.M. 692, 42 P.3d 272.

In the present case, the judge's decision to proceed to voir dire to address the effect of publicity was well within his discretion. *House* sets forth a number of factors to consider for determining whether publicity is presumptively prejudicial. *House*, 1999-NMSC-014, ¶¶ 59-75. Particularly significant in the present case is the factor of the "timing" of the publicity. *Id.* ¶¶ 60-61. As set forth above, the publicity underlying Defendant's request for a change of venue appeared only three times and took place nine months before trial. The record proper further provides that the population of Doña Ana County had a census estimate in 2003 of 182,165 persons. Under these circumstances, we cannot agree with Defendant's argument that the publicity was "extensive" or that the "jurors were constantly exposed to details surrounding both cases." *See id.* ¶ 60 (stating that "[i]f detrimental articles and broadcasts appeared months or years before the beginning of a trial, the probability of prejudice is significantly reduced"). We therefore agree with the judge's decision

to proceed to voir dire to examine whether there was actual prejudice, rather than to rely on a presumption of prejudice. *Cf. id.* ¶ 58 (recognizing that "[p]rejudice may be established if a community is so saturated by a barrage of inflammatory and biased publicity, close to the beginning of legal proceedings, that the trial inevitably takes place in an atmosphere of intense public passion").

**C. Defendant Suffered No Actual Prejudice**

In the absence of presumed prejudice, Defendant was required to demonstrate through voir dire that he was actually prejudiced by the publicity. *See id.* ¶ 46. Our review of the voir dire proceedings indicates that not only were the prospective jurors free from prejudice, but that only one, because of a personal connection to Defendant, was even aware that there had been any publicity.

At the beginning of voir dire, the judge asked the prospective jurors as a whole whether anyone knew Defendant. In response, prospective juror Carmody indicated that Defendant was his wife's former employee and that "we've followed the news account." The judge instructed Carmody to approach the bench and the judge and counsel then proceeded to individually voir dire Carmody. In response to the judge's inquiry about the effects of the media, Carmody answered, "I probably have some personal feelings about his employment, I guess it would be a problem to be real fair." With the agreement of both parties, Carmody was subsequently excused for cause.

Specific to publicity, the judge asked the prospective jurors as a whole whether "any of you have seen or heard anything about this case that you recollect in the media, that would be the newspaper, television, anything in the media? Do any of you recall having read anything at all about this case or Mr. Haskins?" Significantly, none of the prospective jurors indicated that they had even been exposed to any media. For this reason, we conclude that there was no basis upon which to find actual prejudice due to publicity. *See, e.g.*, *State v. Barrera*, 2001-NMSC-014, ¶ 18, 130 N.M. 227, 22 P.3d 1177 (concluding that substantial evidence supports the trial court's determination that there was no evidence of actual prejudice among the members of the jury when those individuals selected for the jury stated that they were either unfamiliar with the case or that they could decide the case based upon the evidence presented at trial).

To conclude, not only was there no reasonable presumption of prejudice, but the voir dire proceedings established that the publicity did not result in any actual prejudice by the prospective jurors. Lastly, apart from the adequacy of the voir dire, Defendant has not demonstrated that there was a problem with any of the chosen jurors that actually served on the jury. *See State v. Montoya*, 2005-NMCA-078, ¶ 17, 137 N.M. 713, 114 P.3d 393 (holding that the court did not abuse its discretion in denying the venue request when it took care to seat a fair and impartial jury).

**D.** **The Court did not Abuse its Discretion in Denying Defendant's Request for Individual Voir Dire**

Despite the foregoing, in the context of his venue argument, Defendant maintains that it was impossible to know if the jurors were actually prejudiced because the judge refused his request for individual voir dire. The decision to grant or deny individual voir dire is a matter for the trial court's discretion. *State v. Gonzales*, 112 N.M. 544, 549, 817 P.2d 1186, 1191 (1991) (holding that the manner in which voir dire is conducted lies within the court's discretion and is "limited only by essential demands of fairness"). Defendant's argument for individual voir dire—and we are perhaps generous to even call it an argument, given that Defendant only very briefly referenced his request for such in his brief—appears to be directed to the publicity that took place nine months before trial as well as to publicity that took place during trial.

We address first Defendant's argument that individual voir dire was merited regarding the publicity that took place nine months before trial. Initially, we question whether Defendant adequately preserved his argument for individual voir dire for this publicity. In response to Defendant's request for individual voir dire in his written pleadings, the judge denied his request but provided that he would consider individual questioning if it became apparent that it was needed. During the subsequent voir dire proceedings, Defendant did not renew his request for individual voir dire or otherwise express dissatisfaction with the adequacy of the judge's collective voir dire question

12

for publicity. In such instance, we may easily surmise that Defendant was satisfied with the general voir dire questioning relating to publicity and elected not to revive his request for individual voir dire. *See State v. Vallejos*, 1998-NMCA-151, ¶ 31, 126 N.M. 161, 967 P.2d 836 (providing that the failure to renew an objection that the court has deferred ruling upon results in a lack of preservation). Even if we viewed Defendant as having preserved his argument, however, we would affirm. As noted previously, before the trial began, the judge stated at the venue hearing that "we will ask who has seen or heard anything in the media and talk to those." Under this approach, the judge left open the possibility of permitting individual voir dire if Defendant demonstrated the need for it during the actual jury selection. As planned, during the subsequent voir dire, the judge collectively asked the prospective jurors if any members had been exposed to publicity about Defendant. Because no members answered in the affirmative, it was not necessary for the judge to further consider whether individual voir dire was merited. And given the absence of any extensive or inflammatory media coverage, we believe that the judge was well within his discretion to initially address the impact of publicity collectively rather than asking each juror individually whether they had been exposed to publicity.

In sum, Defendant fails to demonstrate how he was prevented from adequately inquiring into the effect of pre-trial publicity on prospective jurors. We accordingly

conclude that the voir dire examination was more than sufficient to test prospective jurors for bias and to insure that Defendant received a fair trial by a panel of impartial jurors. *See generally State v. Lasner*, 2000-NMSC-038, ¶ 27, 129 N.M. 806, 14 P.3d 1282 (holding that the trial court did not abuse its discretion by denying defendant's change of venue motion when the defendant was able to question and challenge for cause potential juror members regarding pretrial publicity).

We next address the publicity that took place during trial. Defendant briefly references this publicity in his brief and indicates that his request for individual voir dire was also directed to this publicity. The transcript provides the following:

> *Defense counsel*: []We want to address the question of publication. It's been in the news last night, we'd like to voir dire the jurors about whether they read anything, saw anything. This was in the print and it was on television. It's got a big story here today.

> *Judge*: I didn't see it. I came to work before the paper arrived . . . . I'll be glad to ask the jury, just generally of the panel, if they followed the [c]ourt's admonition as to any potential media about this case. If we get a positive answer, then I'll simply bring that juror to the bench and we'll ask that juror a few questions[]

> . . .

> *[After the jury returned], Judge*: Ladies and gentlemen of the jury, I have been told that there was some media coverage of this case overnight. I want to ask the jurors, just generally, did each of you as jurors follow the admonitions the [c]ourt gave you about avoiding coverage of this case?

> *Jury panel*: Yes.

14

*Unidentified juror*: I changed the channel and turned the page.

*Judge*: Thank you very much. I appreciate it.

In our view, although defense counsel asked to voir dire the jurors about the publicity, he did not specifically request that such voir dire questioning be individual. *See State v. Romero*, 2006-NMCA-045, ¶ 14, 139 N.M. 386, 133 P.3d 842 (stating that "[i]n order to preserve an issue for appeal, it must appear that [the] appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court") (alteration in original) (internal quotation marks omitted) . Nonetheless, even if we viewed Defendant's request to question the jurors as one for individual voir dire, we would affirm. Significantly, the record below does not provide the contents of the mid-trial publicity. We therefore presume that it was not prejudicial to Defendant. *See State v. Rojo*, 1999-NMSC-001, ¶ 53, 126 N.M. 438, 971 P.2d 829 (holding that "[w]here there is a doubtful or deficient record, every presumption must be indulged by the reviewing court in favor of the correctness and regularity of the [trial] court's judgment" (second alteration in original)). In the absence of prejudicial publicity, it was not necessary for the judge to individually voir dire the jurors. *See State v. Holly*, 2009-NMSC-004, ¶ 19, 145 N.M. 513, 201 P.3d. 844 (in the context of mid-trial publicity, providing that the district court must conduct individual voir dire of a juror only when a juror has been exposed to publicity that is inherently prejudicial).

**III.    Conclusion**

We hold that sufficient evidence supports Defendant's convictions and that the judge did not abuse his discretion in denying Defendant's request for a change of venue.  We affirm.

**IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:

_____
**CELIA FOY CASTILLO, Judge**

_____
**TIMOTHY L. GARCIA, Judge**