This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-35780**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JEREMY JARAMILLO,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Christina P. Argyres, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

The Law Office of Scott M. Davidson, Ph.D., Esq.
Scott M. Davidson
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**BOGARDUS, Judge.**

**{1}** Defendant Jeremy Jaramillo appeals from his conviction by a jury of two counts of criminal sexual penetration in the first degree (child under thirteen), three counts of criminal sexual contact of a minor in the second degree (child under thirteen),[1] three

---

[1] These charges stem from incidents involving two children. The counts challenged by Defendant in this appeal relate only to the incidents involving Victim. Therefore, we do not further address the incident involving the other child in this opinion.

counts of criminal sexual penetration in the second degree (child thirteen to eighteen) (person in position of authority), and three counts of criminal sexual contact of a minor in the second degree (child thirteen to eighteen) (person in position of authority). On appeal, Defendant raises due process and double jeopardy arguments, challenges three of the district court's evidentiary rulings, and contends that cumulative error deprived him of a fair trial. For the reasons that follow, we reverse one of Defendant's convictions for criminal sexual contact of a minor in the second degree (child thirteen to eighteen) (person in position of authority) and otherwise affirm.

## BACKGROUND

**{2}**     The following facts are taken from the evidence presented at Defendant's second trial.[2] Although Defendant was not Victim's biological father, he took on the role of a father to her. At the time of the incidents that led to Defendant's charges, Defendant was married to Victim's mother (Mother). At some point, Defendant and Mother separated and lived apart; however, Defendant still had contact with Victim, spent time at her home, and maintained a parental role with her.

**{3}**     Victim testified that Defendant first abused her when she was eleven or twelve years old. Victim reported that they were living in apartments in Albuquerque at the time and that the abuse occurred in Mother's room. Victim testified that Defendant stuck his hand in her pants and inserted a finger inside of her. Victim also reported that Defendant touched her breast area at the same time. After that first incident, Victim testified that it happened frequently in other rooms in the apartment. Victim recalled a second specific incident in the apartment that occurred in her bedroom. Victim testified that Defendant put his hand in her shirt and touched her breasts. Victim further testified that Defendant put his hand underneath her clothes and underwear and inserted his fingers inside her again during that incident.

**{4}**     Victim testified that Defendant's abuse continued after their family had moved to a two-story house on the west side of Albuquerque and testified to three specific incidents that occurred at that house. The first two incidents occurred when she was around thirteen years old and the third incident occurred when she had just turned fourteen. First, Victim testified that Defendant put his fingers inside of her vagina while she was in her bedroom. Second, Victim testified that on Halloween, while she was out of school for teachers' conferences, Defendant touched her breasts and genitals both on top and under her clothes while she was in Mother's room. Third, Victim testified that Defendant wanted her to allow Defendant to abuse her in order to allow Victim to get her hair dyed. Victim reported that, while she was in her room, Defendant put his hand under her shirt and touched her breasts. Victim testified that Defendant also touched her vagina and inserted his fingers inside of her.

2Defendant was first tried in August 2011. After the State presented its evidence during the first trial, the parties stipulated to dismissal with prejudice of one count of criminal sexual penetration of a minor in the first degree and one count of criminal sexual contact of a minor in the second degree. A mistrial was declared after the jury was unable to reach a unanimous verdict on the remaining counts, and the State reserved its right to retry Defendant.

**{5}**     At the close of the State's evidence, Defendant moved for a directed verdict on all counts. The district court denied Defendant's motion. Defendant then testified in his own defense and denied doing the acts Victim testified to.

**{6}**     The jury convicted Defendant on all counts. Defendant appeals.

**DISCUSSION**

**I.     There Is Insufficient Evidence to Support One of Defendant's Convictions of Criminal Sexual Contact of a Minor in the Second Degree**

**{7}**     While Defendant has not challenged the sufficiency of the evidence supporting any of his charges, we exercise our discretion to sua sponte address whether substantial evidence supports Defendant's convictions because such an inquiry implicates fundamental error and Defendant's fundamental rights. *See State v. Clemonts*, 2006-NMCA-031, ¶ 10, 139 N.M. 147, 130 P.3d 208 ("We sua sponte raised the question whether there was sufficient evidence presented by the [s]tate to satisfy each element set forth in [the jury instruction] because the [s]tate's failure to come forward with substantial evidence of the crime charged implicates fundamental error and the fundamental rights of [the d]efendant."). "The doctrine of fundamental error is to be resorted to in criminal cases only for the protection of those whose innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand." *State v. Barber*, 2004-NMSC-019, ¶ 14, 135 N.M. 621, 92 P.3d 633 (internal quotation marks and citation omitted). Having conducted a full review of the record of his trial, we conclude that one of Defendant's convictions for criminal sexual contact of a minor in the second degree (child thirteen to eighteen) (person in position of authority) must be reversed. We explain.

**{8}**     In closing arguments, the State argued that Victim testified that on five different occasions Defendant put his fingers inside of her and touched her breasts. However, a review of Victim's testimony demonstrates that was not the case. When asked about the first incident that occurred in the two-story house when she was thirteen years old, Victim testified that Defendant put his fingers inside of her vagina while she was in her bedroom. When asked if Defendant did anything else on this occasion, Victim responded, "Not that I remember." Nowhere in the testimony that followed did Victim ever state that Defendant touched her breasts on that occasion. In contrast, Victim testified to four other occasions where Defendant touched her breasts as well as digitally penetrated her. Because Victim's testimony established four distinct times that Defendant touched her breasts, not five, we conclude that just four of Defendant's convictions for criminal sexual contact of a minor in the second degree were supported by substantial evidence. Accordingly, we reverse one of Defendant's convictions for criminal sexual contact of a minor in the second degree (child thirteen to eighteen) (person in position of authority).

**{9}** Our review of the record indicates that Defendant's other charges are supported by substantial evidence. We next address Defendant's due process and double jeopardy arguments to those convictions.

## II. Defendant's Due Process Arguments Are Unpreserved

**{10}** Defendant argues that a lack of specificity and differentiation between the counts listed in the indictment violated his right to due process. Defendant also argues that his right to due process was violated because the State's evidence at trial, as well as the jury instructions, failed to differentiate the evidence between the counts.

**{11}** "Procedural due process under the Fourteenth Amendment to the United States Constitution requires the [s]tate to provide reasonable notice of charges against a person and a fair opportunity to defend." *State v. Dominguez*, 2008-NMCA-029, ¶ 5, 143 N.M. 549. 178 P.3d 834 (internal quotation marks and citation omitted). "Procedural due process also requires that criminal charges provide criminal defendants with the ability to protect themselves from double jeopardy." *Id.* (internal quotation marks and citation omitted). "We review questions of constitutional law and constitutional rights, such as due process protections, de novo." *State v. Vargas*, 2016-NMCA-038, ¶ 38, 368 P.3d 1232 (internal quotation marks and citation omitted). However, "[d]ue process claims will not be addressed when raised for the first time on appeal." *State v. Martinez*, 2007-NMCA-160, ¶ 4, 143 N.M. 96, 173 P.3d 18.

**{12}** "To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked." Rule 12-321(A) NMRA. Defendant argues that he preserved his argument regarding the sufficiency of the indictment during his motion for a directed verdict. However, nothing in Defendant's directed verdict motion indicated that the indictment itself was being challenged. Rather, Defendant referenced specific counts listed in the indictment and argued that "the State has failed to elicit proper *testimony* with any specificity." (Emphasis added.) Defendant's directed verdict argument, therefore, was insufficient to preserve this issue for review. Furthermore, we note that Defendant does not direct us to anywhere in the record that he requested a statement of facts, pursuant to Rule 5-205(C) NMRA. *See State v. Salgado*, 1967-NMSC-147, ¶ 3, 78 N.M. 165, 429 P.2d 363 ("A defendant is protected [from issues arising from an insufficient criminal information] by the right to request a bill of particulars, and a failure to request a bill of particulars amounts to a waiver of defects in the information." (citation omitted)); *State v. Huerta-Castro*, 2017-NMCA-026, ¶ 12 n.3, 390 P.3d 185 ("While the terms 'bill of particulars' and 'statement of facts' are used interchangeably in our jurisprudence, we note that 'statement of facts' is the term adopted in our Rules of Criminal Procedure."). Therefore, we conclude Defendant's due process claim as it relates to the indictment is unpreserved.

**{13}** We reach the same conclusion on Defendant's jury instruction-related due process claim. The district court went through every instruction with the parties and specifically asked Defendant whether he had any objection. Defendant raised no objection to any of the instructions except those concerning the three counts alleging

criminal sexual contact of a minor in the second degree (child under thirteen), to which Defendant stated that he had no additional objections "that weren't already raised in the motion for directed verdict." To reiterate, Defendant's motion for directed verdict challenged only the presentation of evidence related to specific counts. Therefore, we conclude Defendant's due process claim as it relates to the jury instructions is also unpreserved.

**{14}** To the extent that Defendant's due process arguments also present a double jeopardy challenge, we turn to that challenge next.

### III.  Defendant's Multiple Convictions Do Not Violate Double Jeopardy

**{15}** Defendant argues that neither the language of Section 30-9-11 nor the language of Section 30-9-13 indicates that the Legislature "intended multiple punishments for individual acts of sexual contact or sexual penetration." Defendant further argues that there was not sufficient indicia of distinctness to support his multiple convictions under those statutes.

**{16}** "A double jeopardy claim is a question of law that we review de novo." *State v. Bernal*, 2006-NMSC-050, ¶ 6, 140 N.M 644, 146 P.3d 289. "The constitution protects against both successive prosecutions and multiple punishments for the same offense." *State v. Branch*, 2018-NMCA-031, ¶ 22, 417 P.3d 1141; *see* U.S. Const. amend. V; N.M. Const. art. II, § 15. Defendant raises a unit-of-prosecution claim "in which an individual is convicted of multiple violations of the same criminal statute." *Bernal*, 2006-NMSC-050, ¶ 7. "For unit-of-prosecution challenges, the only basis for dismissal is proof that a suspect is charged with more counts of the same statutory crime than is statutorily authorized." *Id.* ¶ 13.

**{17}** In *Herron*, our Supreme Court stated that "Section 30-9-11 cannot be said as a matter of law to evince a legislative intent to punish separately each penetration occurring during a continuous attack absent proof that each act of penetration is in some sense distinct from the others." *Herron v. State*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624. The Court identified six factors that can inform such an analysis:

> (1) temporal proximity of penetrations (the greater the interval between acts the greater the likelihood of separate offenses); (2) location of the victim during each penetration (movement or repositioning of the victim between penetrations tends to show separate offenses); (3) existence of an intervening event; (4) sequencing of penetrations (serial penetrations of different orifices, as opposed to repeated penetrations of the same orifice, tend to establish separate offenses); (5) [the] defendant's intent as evidenced by his conduct and utterances; and (6) number of victims (. . . multiple victims will likely give rise to multiple offenses).

*Id.* The court noted that "[e]xcept for penetrations of separate orifices with the same object, none of these factors alone is a panacea, but collectively they will assist in

guiding future prosecutions under Section 30-9-11." *Herron*, 1991-NMSC-012, ¶ 15. This Court also has applied these factors to determine whether sufficient indicia of distinctness supports multiple charges under Section 30-9-13. *State v. Haskins*, 2008-NMCA-086, ¶ 17, 144 N.M. 287, 186 P.3d 916.

**{18}** During her testimony, Victim identified five distinct occasions, separated both temporally and by location, when Defendant penetrated her with his fingers. On four of those occasions, Victim testified that Defendant also touched her breasts. As such, Victim's testimony contained sufficient indicia of distinctness to support Defendant's five convictions for criminal sexual penetration and four charges for criminal sexual contact. Accordingly, we conclude that Defendant's convictions do not violate double jeopardy.

## IV.	The District Court Did Not Abuse Its Discretion in the Evidentiary Rulings Challenged by Defendant

### A.	Standard of Review

**{19}** "A [district] court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *State v. Jackson*, 2018-NMCA-066, ¶ 13, 429 P.3d 674. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). "We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

### B.	Excluding the Polygraph Examination Was Not an Abuse of Discretion

**{20}** Defendant argues that the district court erred by not admitting evidence that he had twice passed a polygraph examination. In his argument, Defendant acknowledges that, "[i]n New Mexico, the [district] court has discretion to admit results of polygraph tests into evidence if certain conditions, designed to ensure the accuracy and reliability of the test results, are met." *State v. Sanders*, 1994-NMSC-043, ¶ 24, 117 N.M. 452, 872 P.2d 870. Yet, Defendant fails to identify the conditions or develop any argument as to whether those conditions are met in this case. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (acknowledging that appellate courts are under no obligation to review unclear or undeveloped arguments). Nevertheless, we briefly discuss why the district court did not abuse its discretion here.

**{21}** After Defendant filed a notice of intent to introduce polygraph evidence, the State moved to exclude the same or to compel an examination by a State expert. Following a hearing on the State's motion, the district court concluded that

> [b]ecause of the failure to consult with . . . Defendant's treating physical and mental health providers, . . . Defendant's suitability for polygraph testing was not adequately determined, and Mr. Pierangeli was not

sufficiently informed as to the examinee's background, health, and other relevant information prior to conducting the polygraph examinations.

Accordingly, the district court excluded the polygraph evidence because of Defendant's failure to comply with Rule 11-707(C)(3) NMRA.

**{22}** Rule 11-707(C) governs the admission of "[a] polygraph examiner's opinion as to the truthfulness of a person's answers in a polygraph examination[.]" One of the conditions required for admission is that "the polygraph examiner was informed as to the examinee's background, health, education, and other relevant information prior to conducting the polygraph examination[.]" Rule 11-707(C)(3). At the hearing on the State's motion, Mr. Pierangeli testified that he questioned Defendant about his medical conditions, mental health conditions, and the medications he takes. Mr. Pierangeli testified to nine medications that Defendant said he was prescribed, which included pain killers and a psychotropic drug. Mr. Pierangeli believed Defendant had taken one of his medications, Vicodin, the night before the polygraph. Mr. Pierangeli testified that he did not consult with any of Defendant's current or previous physicians or mental health providers. Mr. Pierangeli further testified that he was not trained in medicine, pharmaceuticals, or psychology.

**{23}** Although Mr. Pierangeli's licensure and qualifications were not challenged, Defendant was required to show that Mr. Pierangeli had the proper expertise to evaluate the effect of Defendant's mental and physical conditions on the polygraph. *See State v. Anthony*, 1983-NMCA-148, ¶ 20, 100 N.M. 735, 676 P.2d 262 ("Even though a polygraph examiner is licensed, and possesses the minimum qualifications under . . . Rule [11-]707, a showing that a mental or physical condition exists in the examinee at the time of the test requires an additional showing that the polygraph examiner had the proper expertise to evaluate the effect of this condition on the examinee."). Defendant made no such showing. Thus, the district court could have reasonably, and within its discretion, concluded that Mr. Pierangeli did not have such expertise.

**{24}** Because we cannot characterize the district court's decision "as clearly untenable or not justified by reason[,]" *Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citation omitted), we conclude that the district court did not abuse its discretion in excluding Defendant's polygraph evidence.

**C.    The District Court Did Not Bar Testimony Regarding Text Messages**

**{25}** Defendant next contends that the district court erred by preventing Defendant's "attorney from asking [Mother] about the contents of text messages she sent to him after her daughters alleged that he molested them." Defendant's argument is contrary to the record. Not only did the district court allow Defendant's attorney to extensively question Mother about the text messages at issue, the court overruled the State's objection seeking to limit Mother's testimony on the substance of the text messages. We do not consider Defendant's argument further. *See Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104 ("It is not our practice to rely on assertions of

counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence.").

**D.     Defendant Fails to Develop and Failed to Preserve His Argument as to the Admissibility of the Children's Grandmother's Previous Statement**

**{26}**     Defendant listed Sarah Sandoval, the children's grandmother, as a trial witness. At trial, Defendant acknowledged that Ms. Sandoval was under subpoena and could testify, but indicated that Ms. Sandoval would not remember her previous statement due to her having suffered a stroke. Defendant then argued for admission of Ms. Sandoval's previous statement in lieu of testimony on two grounds. First, Defendant argued that Ms. Sandoval's statement was admissible because, although it was unsworn, she had promised to tell the truth. Second, Defendant argued that the statement was admissible under the residual exception to the rule against hearsay. The district court disagreed with both grounds and excluded Ms. Sandoval's previous statement.

**{27}**     On appeal, Defendant contends that Ms. Sandoval was "unavailable to testify at trial due to a stroke—she would not have remembered giving the [previous] statement, much less hearing from the alleged victims that their stories were fabricated." Defendant argues that the district court's exclusion of this evidence "foreclosed an avenue of [his] defense" and "undermined [his] right to present his own witnesses to establish a defense."

**{28}**     Even if we were to assume, without deciding, that Ms. Sandoval was unavailable, Defendant fails to develop any argument as to why her previous statement would be admissible. *See Guerra*, 2012-NMSC-014, ¶ 21. Furthermore, Defendant presents different arguments in his briefing to this Court than those he presented to the district court. *See State v. Salazar*, 2006-NMCA-066, ¶ 9, 139 N.M. 603, 136 P.3d 1013 ("[P]arties cannot change their arguments on appeal."). Therefore, we decline to address Defendant's undeveloped and unpreserved argument.

**V.     Defendant's Conviction Did Not Result From Cumulative Error**

**{29}**     Concluding there was no error on the points he raised, we need not analyze whether Defendant's conviction resulted from cumulative error. *See State v. Vallejos*, 1998-NMCA-151, ¶ 32, 126 N.M. 161, 967 P.2d 836 ("Because we have rejected [the d]efendant's assertions of error, we conclude that the doctrine of cumulative error does not apply here.").

**CONCLUSION**

**{30}**     We reverse and remand to the district court with instructions to dismiss one of Defendant's convictions for criminal sexual contact of a minor in the second degree (child thirteen to eighteen) (person in position of authority). We affirm Defendant's remaining convictions.

**{31}** IT IS SO ORDERED.

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**ZACHARY A. IVES, Judge**