This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38774**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ROBERTO CORTEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Jane Shuler Gray, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Luz C. Valverde, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**DUFFY, Judge.**

**{1}** Defendant Roberto Cortez appeals his conviction for homicide by vehicle, contrary to NMSA 1978, Section 66-8-101 (2004, amended 2016).[1] Defendant argues that (1) the district court erred in admitting testimony from the State's accident

---

[1]Defendant was also convicted of leaving the scene of an accident, contrary to NMSA 1978, Section 66-7-201(B) (1989), but that conviction is not at issue in this appeal.

reconstructionist expert, and (2) there was insufficient evidence presented at trial to support his conviction. We affirm.

**DISCUSSION**

**I.** **Admissibility of Expert Testimony**

**{2}** Defendant argues that testimony by the State's accident reconstructionist expert, Officer Stan Lundy, exceeded the scope of his expertise when he opined on injuries likely to result from the accident. *See* Rule 11-702 NMRA (discussing criteria for the admission of expert testimony). Defendant's arguments on appeal, as we understand them, are that Lundy was not qualified to offer this opinion, which Defendant characterizes as a "pseudo-medical conclusion," because Lundy "is not an engineer, has no background or training in biomechanics, does not have any type of scientific degree," and that his opinions were unreliable because they are based on "factual assumptions unsupported by the record[.]" The State argues that Defendant did not adequately present and preserve his objections to Lundy's testimony. We agree that preservation is doubtful in this case but conclude that even if Defendant properly preserved the matter, the district court did not err in admitting the testimony.

**{3}** The parties stipulated to Lundy as an expert in accident reconstruction before he took the stand. Lundy testified that he worked with the accident reconstruction team for 15 years, had testified as an expert in accident reconstruction 22 times, and had over 1,100 hours of training in crash investigations and reconstruction. Lundy stated that he was called out to the scene on the morning of the crash; he observed the car at final rest and, after making initial observations, proceeded to document and process the scene. During the State's direct examination of Lundy, the following exchange took place:

| | |
|---|---|
| State: | Were you able to run any tests or factor an actual live person into any of your reconstruction? And I can explain that if, if it needs, any injuries or any remnants of an airbag that on someone's person, anything like that? |
| Lundy: | I did not have people to examine. From looking at the Delta V, yes I would have expected some injuries. But the Delta V alone, with our airbag deployments, I would not have expected a life-threatening injury from that Delta V alone, no. |
| State: | No life-threatening, just with, without looking at an actual person either inside the vehicle when you arrived or on scene when you were there after this accident, are you able to tell or determine what injuries an occupant in this instance, you said the driver and the front-seat passenger sustained or would have sustained? |

Lundy: I would have expected minimum damage with all of the airbag deployments.

State: You said minimum damage?

Lundy: Yes, ma'am. There might have been, we had some broken glass, no seatbelts were buckled. I would have expected some scratches and contusions, and . . . .

Defense counsel objected at that point, saying, "He was qualified as an expert in crash reconstruction. He was, he's not an expert in biology and what kind of injuries. There's been no foundation for that whatsoever." The State agreed to lay a foundation and questioned Lundy about the basis for his opinion regarding the injuries a person could sustain. Defendant neither renewed his original objection nor offered a further objection on the basis that the State had failed to lay a proper foundation for Lundy's testimony. *See State v. Vallejos*, 1998-NMCA-151, ¶ 31, 126 N.M. 161, 967 P.2d 836 (holding that the defendant did not preserve the objection on an alleged discovery violation when he failed to renew the objection after the trial court deferred ruling).

**{4}** Notwithstanding the parties' disagreement regarding preservation and the standard of review, we find no error in the admission of Lundy's testimony. After Defendant raised his foundation objection, the State's additional questioning sufficiently established that Lundy's injury related opinions were based on his calculation of the "Delta V" and his experience in investigating over 1,000 crashes, which allowed him to observe what happens to a person based on different types of accidents. While Defendant takes issue with Lundy's reliance on the Delta V calculation, Defendant has not argued or otherwise established that Lundy's testimony regarding Delta V forces fell outside of the stipulated scope of his expertise in accident reconstruction.[2] And contrary to Defendant's argument, Lundy offered no medical opinion testimony—i.e. that the crash was or was not the cause of any specific injuries—nor did he state that scratches and contusions were the "only" injuries the driver would sustain. Rather, he offered only general testimony, based on his training and experience, that he would not have expected the accident to be fatal, that he would have expected "minimum damage" due to the airbags, and that he would have expected the occupants to sustain scratches and contusions.

**{5}** We also reject Defendant's argument that Lundy's opinions were based on nothing more than assumptions and guesswork, akin to *State v. Downey*, 2008-NMSC-061, ¶¶ 32-35, 145 N.M. 232, 195 P.3d 1244 (holding that the prosecution expert's BAC calculation should not have been admitted because the expert relied on assumptions regarding information critical for an accurate calculation). While Defendant argues that Lundy failed to take into account factors such as the body size of the driver based on

---

2To the extent Defendant argues that the substance of Lundy's Delta V testimony is unreliable, he failed to preserve the challenge and had the opportunity to cross-examine Lundy about the application of Delta V.

seat position, or an eyewitness description of the driver walking away from the scene, Defendant has not established that Lundy's general opinions about expected injuries were grounded in speculation, assumptions, or guesswork rather than his observations and investigation of the scene of the accident in this case. *Cf. id.* To the extent Defendant believes Lundy's conclusions were incorrect or incomplete, we note that defense counsel cross-examined Lundy on these points and Lundy acknowledged that the occupants could have sustained additional nonfatal injuries, like hitting their heads, burns, a bloody nose, or a broken wrist from the airbags. *See Conception & Rosario Acosta v. Shell W. Expl. & Prod., Inc.*, 2016-NMSC-012, ¶ 28, 370 P.3d 761 (stating that any doubt about the admissibility of expert testimony should be resolved in favor of admission and that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence" (internal quotation marks and citation omitted)).

**{6}** In light of the foregoing, we conclude that the district court did not err in allowing Lundy's generalized testimony about the types of injuries he would expect the occupants of the vehicle to sustain.

## II. Sufficiency of the Evidence

**{7}** Defendant next challenges the sufficiency of the evidence supporting his conviction, arguing that the State failed to present evidence that Defendant was the one driving at the time of the accident. "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. Applying this standard, and having carefully reviewed the record, we conclude that there is sufficient evidence to support Defendant's conviction.

**{8}** Defendant was captured on surveillance cameras leaving the bar at 1:26 a.m. and getting into the driver's seat of a white four-door car; the victim got into the passenger's seat. Sergeant Larry Horrell testified that not long after, he witnessed a white car driving erratically and run a stop sign. He initially pursued the car, but given the rate of speed the car was traveling, stopped the pursuit and reported it to dispatch. A couple of minutes later, after continuing on to his original destination and driving in the same direction as the white car, Sergeant Horrell noticed dust had been "kicked up" and saw "a bright light just flash." He testified that at that time he "knew that there was a crash" and drove toward the scene.

**{9}** Sergeant Horrell detailed his route across town toward his original destination, establishing that the accident occurred on the other end of town from the bar. Although Defendant maintains he was not driving the car at the time of the crash, the location and timing of the crash—at most twelve minutes after Defendant drove away from the bar—would allow a jury to reasonably infer that Defendant had been the driver. In addition, Defendant was seen on his cell phone as he was leaving the bar. His phone was found

at the scene of the crash. Finally, the day after the accident, investigating officers observed scratches on Defendant's arm. While Defendant claimed he did not remember how he sustained those scratches, they are consistent with Lundy's expert testimony regarding the injuries he would have expected the occupants to sustain in that type of accident, suggesting that Defendant was inside the vehicle at the time of the crash. *See State v. Vigil*, 1985-NMCA-110, ¶ 22, 103 N.M. 643, 711 P.2d 920 (holding that there was sufficient evidence that the defendant was the driver because the jury "properly considered the expert testimony . . . which placed [the] defendant behind the wheel immediately before the crash" and that the "jury was not required to accept [the] defendant's version").

{10}    The evidence presented was sufficient to support the jury's conclusion that Defendant was the one driving at the time of the accident.

**CONCLUSION**

{11}    For the foregoing reasons, we affirm Defendant's conviction for homicide by vehicle.

{12}    **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**KATHERINE A. WRAY, Judge**